4-0-9-0-2-6-6. Counsel, please. I may have placed the court. My name is Marty Spiegel and I represent the employer PACTIV in this appeal from the Commission's decision in this matter. For some background, Mr. Costello filed an application for adjustment of claim alleging the date of accident November 9, 2005. That was the date that was placed on the stipulation sheet when the case proceeded to trial. The arbitrator found that Mr. Costello proved that he sustained accidental injuries arising out of and in the course of disemployment, that he had given notice on November 9, 2006, but sui sponte changed the accident date almost a year to November 2, 2006. We then appealed that decision to the Commission. The Commission affirmed the decision, including as to notice, but changed the manifestation date to September 25, 2006. So at this point, we'd already been faced with three accident dates, November 9, 2005, November 2, 2006, and September 25, 2006. It's our position that the Commission's decision is against the manifest way that the evidence as to the manifestation date and that timely notice was given. For some background on the medical aspects of this case, the claimant had worked for PECTA for a number of years. He went to see Dr. Chopra on May 22, 2006, complaining of pain principally in his left hand and arm. Dr. Chopra made a provisional diagnosis of either epicondylitis or carpal tunnel syndrome. He wasn't sure, so he ordered an EMG. The EMG was done on June 9, 2006, and confirmed the diagnosis. He then went back to Dr. Chopra on two occasions, the last being July 21, 2006, which time he said, you're not getting better, we're going to refer you to an emergency surgeon. He was referred to Dr. Rodney Heron. Dr. Heron's office saw the claimant on August 10, 2006. A subsequent EMG was done at the request of Dr. Heron's office on September 25, 2006, the date of manifestation found by the Commission. The claimant has a burden of proving all of the elements of their case, and I believe that includes the manifestation data. The manifestation data, of course, is the data on which the fact of the injury and its relationship to work would be readily apparent to a reasonable person. Of course, you're not going to reverse the decision unless it's against the manifest weight of the evidence, unless an opposite conclusion is readily apparent, which I believe it is in this situation. What is the proper manifestation date for this case? Could it be May 22, when he first saw Dr. Chopra and the diagnosis of carpal tunnel versus epicondylitis was rendered? Could it be June 20 or July 21? Absolutely. There's no question, though, that it cannot be later than August 10, 2006. That's the day he went to Dr. Heron's office. He told Dr. Heron's office that he had pain in both arms, hands, and wrists and was complaining of numbness and tingling. The diagnosis was bilateral cubital tunnel and bilateral carpal tunnel syndrome. He specifically told the doctor what he did for a living, and he testified on cross-examination that he believed work was the cause of his symptoms, and he knew at that point that work was the cause of his symptoms. What point? August 10, 2006, when he saw Dr. Heron's office. The Commission found September 25, 2006 as the manifestation date, indicating that the extent of the physical problems were identified for the first time. Bilateral carpal tunnel syndrome, bilateral cubital tunnel syndrome. That's wrong. It's plain wrong because that diagnosis had been made on August 10, 2006. It's our position that August 10 is the proper date for the manifestation date. It's when Mr. Costello knew of his condition and its relationship to work. What are you basing that on? What factual matters are you basing that conclusion on? The diagnosis by Dr. Heron's office of bilateral carpal, bilateral cubital tunnel syndrome, the fact that he described his job duties to Dr. Heron's office, and the fact that I believe on page 36 of the transcript he admitted that he knew of his condition and believed it to be related to his work activities no later than when he saw Dr. Heron's office. What was the purpose of the EMG ordered on September 25, 2006? That was to confirm the diagnosis of the doctor. Up to that point it was, what would you call it, assessment? A provisional diagnosis. But the final diagnosis wasn't until September 25. Well, it did change the diagnosis. It confirmed it, Your Honor. In any event, it appears that the commission chose September 25, 2006 as the manifestation date, knowing the commission had found a notice date, or the arbitrator found a notice date of November 9, 2006. It's exactly 45 days prior to the notice. It's our position that the decision should be reversed, that the manifestation date should be found to be against the manifest weight of the evidence, that the proper manifestation date is August 10, 2006, and because notice was not given until November 9, 91 days later, he failed to prove the timely notice was given, it's jurisdictional, and his claim should be filed. Thank you. Thank you, Your Honor. Counsel, please. Please, the court. I'm Pete Drummond. I represent the petitioner. Mr. Cohen, can I ask you a question? This was presented to the arbitrator as a 19B proceeding, was it not? Yes, I believe it was. Because the commission decision says it's remanded back to the arbitrator? Correct. It's been a long time. No, I mean, it's not clear from the arbitrator's decision whether it was a 19B. I only picked it off based on the order of the commission itself, remanded. Correct. Okay. The claimant here, and that's probably where I was going to start, at no time had this worked because of the fact that he, the factual pattern as far as the medical treatment that's established in the record, but at no time did he ever put it to work. So there's never a situation where it says, I have carpal, I have cubital, and I'm off work. It was never off work. In fact, it worked, I think, the shift before we even tried this claim, and he continued to work after the claim. So there's been no lost time on behalf of this. This is simply a claim where we wanted approval for the surgery for the claimant. Now, unfortunately, since that time, he has brain cancer and is no longer working for the company and probably isn't, the fact of the matter is he's probably not going to have surgery now anyways. But nonetheless, we're here on the issues. And I think that the findings of the industrial commission are certainly within the realm of the evidence. The claimant testified at the hearing that he originally had given notice and told his supervisor and named him in the summer of 2006 that he had some problems with his hands and he thought they would work the way they did. He said he even filled out a written accident report. Now, what was interesting about this is that the people that he testified and gave notice to and the location of the written report, of course, would be at the Packard plant, which was five minutes from where the hearing site was. The respondent called the witness. They produced no evidence. They produced no witness and said he did not, in fact, file a written report on this. And he used the presumption when you don't file or you don't provide evidence that's in your control, no presumption is that that evidence is adverse to you. Having said that, it's clear that both the treating doctors of the petitioner indicated that the condition of ill-being was caused by connective disemployment. And I think if you even read the actual words used by their examining physician, he certainly indicates that it would be. He makes a couple of curious statements. He said, at this time, work-relatedness has not been established with Mr. Costello. He doesn't say it's not work-related. He says it hasn't been established as if he's referring to some third party. And then he goes on to say he's going to talk to Mr. Costello's supervisor about how the machine works to try to make sure it doesn't break down as often, apparently implying that he wouldn't have to have this hand-intensive type of labor involved with the production process. So if you look at the medical evidence, I think it's fair to say that there's no medical evidence in the claim that says that the carpal tunnel is not causing related disemployment. I think the notice issue falls on its own merits. There's certainly no indication that he did not give timely notice. In fact, his own testimony is that in the summer of 2006, he gave the notice and filled a written report. And finally, the rule on notice is that as long as some notice is given, as long as it's defective, it's not prejudicial unless the respondent shows prejudice, which, of course, they showed none. They called no witnesses. So, de facto, they showed none. And for all those reasons, I think the findings of the industrial commission should be affirmed. What is your position on the date of the manifestation of the injury? What do you believe it is? My client indicated he told, I think right after he saw Dr. Chopra, he told his supervisor, I've got these problems, he said he filled out a report. That's what my client testified he did. I don't have a copy of the report. That's what he said he did. But then he went and saw the physician for the respondent, and later on in September he had the diagnostic testing. If you read the cases, I think they usually have to have two things. You have to know you have an injury and have to know it's causally related to his work. I would think that the positive, I think you could easily make the argument the positive diagnosis of the powerful cubital situation was not present until the EMG had occurred in September. But from what my client said, what he testified to, he said I told him in the middle of the summer. I filed a report. So did he have a discussion with Dr. Heron as to whether or not the condition was connected to his work? I don't know, because Dr. Heron was an IME. I mean, I read Dr. Heron's reports, but obviously Dr. Heron's report wasn't present when my client was having the exam. I don't know what Dr. Heron told him or didn't tell him, to be quite honest with you. If you take Dr. Heron's report on its face, the respondent, I think, took the position that Dr. Heron's report indicates that it wasn't related to his employment, although the word's kind of dicey as far as how he sets that forth. And you could say, well, if Dr. Heron in his report said it's not related, then why would it be a manifestation date since their doctor examined him and said he wasn't related on that date? They could certainly make that argument, because Dr. Heron does not positively say in his report. So your position, then, again, on the manifestation date is? I'll go with the one the Commission adopted, and I think it's fairer than the evidence. Thank you. Rebuttal. Thank you, Your Honors. Briefly, Mr. Costello clearly told Dr. Heron that he believed his condition was related to work, and I specifically quote, when he was asked, did you believe that your problem was caused by your work at that point? And did you tell him that? He said, I did, because when I was hired, in fact, if they did a carpal tunnel test, complete fiscal, there was nothing wrong with me when I was hired in. So when you first saw him, you told him you thought it might be related to your work activities? Yes. The issue of notice is not a red herring here. The issue of prejudice doesn't come into play. This is a situation where no notice was given within the time frame from when his date of manifestation was until November 9, 2006. And as this Court has held in the White decision, it has to be notice of an industrial injury. Just telling the employer, which is what Mr. Costello admitted during the course of this testimony, that he had a condition, that he was having tests, but that he never told him it was work-related until November 9, 2006, when he filled out an accidental report, doesn't constitute notice under your White decision. What if the manifestation date was November 2nd? The date of accident found by their... Certainly, if that weren't a proper manifestation date, notice would have been timely given. But the question, I think, Your Honor, is what is the proper manifestation date? And in this case, there's no question that Mr. Costello knew of his condition and knew it was related to his work activities no later than August 10, 2006, and that should be... What are you basing that on? When was the EMG done? The second EMG was done November 25, 2006, but he knew what the diagnosis was prior to that time. It was confirmed by the EMG, but they told him what the diagnosis was. Who told him what the diagnosis was? The doctor's nurse practitioner or physician's assistant. When did he discuss it with Dr. Herron, specifically? It wasn't until November, is that correct? That would be correct. He did not see Dr. Herron until November 2, 2006. So why can't the manifestation date be November 2nd? I suppose it could. But, you know, the question is which comes first. And it's our position that that would be the proper manifestation date. There aren't alternative manifestations. You have to pick one for purposes of determining if proper notice was given. Thank you. Thank you, Counselor. First, we'll take the matter as it arises for discussion.